UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60816-CIV-DIMITROULEAS/SNOW

JUNE GANPAT and
RICARDO TONG CHIN,

  Plaintiffs,

v.

AVENTURE INVESTMENT REALTY, INC.,
a Florida Corporation, ANDRES PIGUET, an
individual, and MYRON BAILEY, an individual,

  Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendants' Motion to Dismiss the Amended Complaint for Insufficient Service of Process. (ECF No. 53) The Honorable William P. Dimitrouleas referred that portion of the Motion pertaining to service of process to the undersigned for appropriate disposition or Report and Recommendation.[1] (ECF No. 54)

## I.  PROCEDURAL BACKGROUND

On April 4, 2020, Plaintiffs brought this action against Defendants Andres Piguet ("Piguet") and Aventure Investment Realty, Inc. ("Aventure") for money

---

[1] In their Motion, Defendants also moved for dismissal based upon a lack of personal jurisdiction. This Court does not address the issue of personal jurisdiction in this Report and Recommendation. Pursuant to the Order of Reference, the District Court specifically retained the issue of personal jurisdiction for its review. (ECF No. 54 at 2, n.1)

damages for minimum wage violations, unpaid overtime wages, retaliation, and tax fraud pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and 26 U.S.C. § 7434.[2] On July 27, 2020, the Court issued an Order to Show Cause for Failure to Comply with Federal Rule of Civil Procedure 4(m) because the record failed to establish that Defendants had been properly served within 90 days after the Complaint was filed. (ECF No. 6) Plaintiffs responded to the Order and requested an additional 75 days to effectuate service. (ECF No. 7 at 2) The Court gave Plaintiffs until August 31, 2020, to perfect service. (ECF No. 8) On August 24, 2020, Plaintiff sought another extension of time to properly serve Defendants. (ECF No. 9) In response, the Court extended the deadline to September 18, 2020. (ECF No. 11)

Defendants filed Motions to Dismiss for Insufficiency of Service of Process on September 3, 2020, and September 4, 2020 ("First Motions to Dismiss"), alleging that Plaintiffs had failed to use diligent efforts to properly serve Defendants and that Plaintiffs had failed to strictly comply with the statutory requirements for effecting substitute service under Fla. Stat. § 48.181. (ECF Nos. 20; 23) The Motions were referred to the undersigned and a Report and Recommendation was entered on October 28, 2020 ("First R&R"). (ECF No. 34) In the First R&R, this Court recommended that the District Court should find that service of process was insufficient, but that Plaintiffs should be allowed additional time to perfect service. (ECF No. 34 at 17) The First R&R was adopted on November 12, 2020, and the deadline to perfect service was extended to January 11, 2021. (ECF No. 39)

---

[2] Plaintiffs voluntarily dismissed Defendant Myron Bailey, which the Court granted on September 21, 2020. (ECF No. 28)

Plaintiffs filed their Amended Complaint on November 13, 2020. (ECF No. 40) On January 5, 2021, Plaintiffs moved for another extension of time to serve Defendants. (ECF No. 42) The Court granted the extension and the deadline for service was extended to February 8, 2021. (ECF No. 44)

On February 8, 2021, Plaintiffs filed a Notice of Compliance, detailing their attempts at service. (ECF No. 48) On the same day, Defendants filed a Motion for Extension of Time to Respond to Plaintiffs' Amended Complaint. (ECF No. 51) Defendants' Motion was granted and the Court extended the deadline for Defendants to respond to March 1, 2021. (ECF No. 52)

Defendants filed the instant Motion to Dismiss for Insufficient Service of Process pursuant Federal Rule of Civil Procedure 12(b)(5) on March 1, 2021, in which Defendants assert that Piguet and Aventure have yet to be properly served. (ECF No. 53) The Motion is now ripe for review.

## II. FACTUAL BACKGROUND

### A. Attempts at Service at Issue in the First Motions to Dismiss

This case began in July of 2019 when Plaintiffs served Defendants with a Notice of Intent to Litigate. (ECF No. 55 at 2) The parties engaged in pre-suit discussions from July 24, 2019, until February 14, 2020. (ECF No. 55 at 2) On February 14, 2020, Defendants' former counsel, Aaron Tandy, informed Plaintiffs' counsel that Defendants did not provide him with authorization to accept service. (ECF No. 55 at 2)

Plaintiffs filed their Complaint on April 20, 2020. (ECF No. 1) Plaintiffs attempted to personally serve Defendants at 2450 Hollywood Boulevard, Suite 200B, Hollywood, FL 33020 ("Suite 200B") on four different occasions. At these times, Suite 200B was the address registered with the Florida Division of Corporations for Aventure, with Piguet listed as an officer and Simon Naon ("Aventure's registered agent") listed as the registered agent. (ECF No. 27-1 at 3) Service attempts at Suite 200B were made on: (1) May 11, 2020, at 12:30 p.m.; (2) June 1, 2020, at 9:35 a.m.; (3) June 1, 2020, at 1:35 p.m.; and (4) June 10, 2020, at 12:40 p.m. (ECF No. 7-1) The process server noted during each attempt that the business was closed and that the name on the door was Freedom Financial America. (ECF No. 7-1) There was no sign identifying Aventure or its registered agent.

Plaintiffs' counsel, Ria N. Chattergoon ("Ms. Chattergoon"), filed a declaration with the Court on September 18, 2020. (ECF No. 27-1) In her Declaration, Ms. Chattergoon affirmed that she had personally visited the Suite 200B address on September 18, 2020, at 11:15 a.m., and witnessed that the company listed there was Elite Management Financial. (ECF Nos. 27-1 at 2; 25-4 at 3) Aventure's registered agent admitted in his declaration filed with the Court on September 23, 2020, that the office located at Suite 200B was in fact leased to Elite Financial Management. (ECF No. 29-1) Aventure's registered agent also stated that either he or a family member would stop by Suite 200B on a weekly basis to retrieve mail. (ECF No. 29-1 at 2) Ms. Chattergoon also stated in her Declaration that she spoke with the owner

of Elite Management, Shirley Auguste, who indicated that Defendants did not occupy the suite and that she did not work for Aventure. (ECF No. 27-1 at 2)

After being unable to personally serve Defendants, Plaintiffs attempted to effectuate substituted service pursuant to Fla. Stat. § 48.181. On July 24, 2020, Plaintiffs sent correspondence to the Florida Secretary of State requesting that it accept service on behalf of Defendants. (ECF No. 7 at 2) The Secretary of State accepted service on July 30, 2020. (ECF Nos. 25-1; 25-2) However, Plaintiff did not receive a Return of Service from the Secretary of State until August 27, 2020. (ECF No. 25 at 3)

An affidavit filed by Plaintiffs' courier, Craig White ("White"), states that on August 28, 2020, he delivered a package to Suite 200B containing the Secretary of State's acceptance of service. (ECF No. 25-4 at 1) White also delivered another package to Suite 200B on September 4, 2020, that contained waivers of summonses for both Aventure and Piguet. (ECF No. 25-4 at 2) During both instances, White states that he placed the packages through the mail slot of the door at Suite 200B. (ECF No. 25-4) Further, White states that Aventure's name was not identified at Suite 200B and no person was present to accept the packages. (ECF No. 25-4) Plaintiffs' counsel also sent waivers to defense counsel via email and priority mail on September 4, 2020. (ECF No. 25-5)

In Defendants' First Motions to Dismiss, Defendants primarily argued that Plaintiffs did not strictly comply with the substitute service statutes and that Plaintiffs did not exercise due diligence in attempting substitute service. (ECF Nos.

20; 23) In the First R&R, the undersigned found that Plaintiffs had exercised due diligence in attempting service, noting that circumstances out of Plaintiffs' control, such as the COVID-19 pandemic and Defendants' registered agent's absence from Suite 200B, were at least partially to blame for Plaintiffs' inability to personally serve Defendants. (ECF No. 34 at 10–12) However, the undersigned also found that the Plaintiffs had not strictly complied with statutory prerequisites to perfect substitute service because Plaintiffs failed to make the necessary jurisdictional allegations in their Complaint as required by Florida law. (ECF No. 34 at 13) Again, the undersigned noted that Plaintiffs' efforts to comply with the substitute service statutes were impeded by Defendants' failure to comply with the registered agent requirements. (ECF No. 34 at 13–14) This Court recommended that Defendants' First Motions to Dismiss be denied despite the fact that service of process was insufficient, and that Plaintiff be given additional time to perfect service. (ECF No. 34 at 16-17)

The R&R was adopted by the District Court on November 12, 2020, and the deadline to perfect service was extended to January 11, 2021. (ECF No. 39) After the entry of the First R&R on October 28, 2020, Plaintiffs' counsel sent an email to defense counsel again requesting waiver of service. (ECF 66-1 at 5) Further, Plaintiffs' counsel sent another email to defense counsel requesting waiver of service on November 12, 2020, after the First R&R was adopted. (ECF No. 66-1 at 4) Defendants' counsel did not accept service on either occasion.

B. The Attempts at Service Currently at Issue

Since the adoption of the First R&R, Plaintiffs have made further attempts to perfect service. Plaintiffs' Amended Complaint was filed on November 13, 2020. (ECF No. 40) Plaintiffs immediately sent the Amended Complaint out for service. (ECF No. 55 at 3)

On November 20, 2020, Plaintiffs attempted to serve Defendants on three separate occasions. At 10:58 a.m., Plaintiffs attempted to serve Piguet at 3801 Hollywood Blvd., Suite 200, Hollywood, FL, 33021 ("3801 Hollywood"). (ECF No. 42-1 at 1) Plaintiffs found the 3801 Hollywood address by conducting a "People Map Report," and Plaintiffs determined this address to be a possible address for service because the report listed Andre Piquet as the owner. (ECF Nos. 66 at 7; 66-1 at 22) At the time of service, the process server noted that this location was vacant and that no name was listed on the door or on the main directory in the lobby. (ECF No. 42-1 at 1)

Also on November 20, 2020, at 11:20 a.m., Plaintiffs attempted to serve Piguet at 1333 E. Hallandale Beach Boulevard, Unit 210, Hallandale Beach, FL, 33009 ("Unit 210 Hallandale"). Plaintiffs found the Unit 210 Hallandale address **by** conducting a search of the Broward County Property Appraiser records in November of 2020. (ECF No. 55 at 10) Andre Pigeut is listed as the owner of the Unit 210 Hallandale address. (ECF No. 55-5 at 3) At the time of attempted service, the process server was informed that Piguet does not live at this location. (ECF No. 42-1 at 1)

The final attempt on November 20, 2020, was made at 10:36 a.m., in which Plaintiffs attempted to serve Aventure at the Suite 200B address. (ECF No. 42-1 at 3) At this time, Suite 200B was still the registered address for Aventure listed with the Florida Department of Corporations. (ECF No. 55 at 8) At the time of attempted service, the process server stated that the name on the door was Elite Management. (ECF No. 42-1 at 3) The process server also spoke with a Shirley Auguste, who was present at Suite 200B. (ECF No. 42-1 at 3) Ms. Auguste stated that she does not work for Aventure, is not the registered agent for Aventure and has never heard of Aventure. (ECF No. 42-1 at 3)

On December 23, 2020, Plaintiffs sent via certified mail a copy of the Amended Complaint, as well as another request for waiver of service to Defendants and to defense counsel. (ECF No. 55 at 4). Defendants and their counsels received the correspondence on December 29, 2020, but they did not agree to waiver of service. (ECF No. 48-1)

Plaintiffs made further attempts at service on December 28, 2020. At 12:00 p.m., Plaintiffs served Aventure's registered agent by serving a copy of the Summons and the Complaint to a UPS mailbox located at 20533 Biscayne Boulevard, Suite 168, Aventura, FL, 33180 ("UPS mailbox"). (ECF Nos. 47; 55 at 7–8) On or about December 20, 2020, Plaintiffs became aware that Aventure's registered agent was also the Financial Controller for Management Miami, LLC ("Management Miami"). (ECF No. 55 at 7) Plaintiffs instructed their process server to serve Aventure's registered agent at Management Miami. (ECF No. 55 at 7) Upon arrival, the process

server determined that the address listed was a UPS store. (ECF No. 55 at 7) The process server reported that Ken Gil, the manager of the UPS store, accepted service and stated that Management Miami maintained an active mailbox at that location. (ECF No. 47)

Plaintiffs contend that Management Miami is the property manager for Aventure. (ECF No. 55 at 7) Plaintiffs' counsel and the process server both left voicemails for Aventure's registered agent and Alan Kervor, the property manager for Aventure, but their calls were not returned. (ECF No. 55 at 7) Elizabeth Pero, an administrative assistant at Management Miami, subsequently informed Plaintiffs' counsel that it managed the Aventure properties, and that Management Miami operated remotely with every employee working from home. (ECF No. 55 at 7) Plaintiffs were unable to locate a residential address for Aventure's registered agent. (ECF No. 55 at 7, n. 4)

Plaintiffs also attempted to serve Piguet on December 28, 2020. At 10:20 a.m. and 12:20 p.m, Plaintiffs attempted to serve Piguet at 1333 E Hallandale Beach Boulevard, Unit 204, Hallandale Beach, FL 33009 ("Unit 204 Hallandale"). (ECF No. 50) Plaintiffs found the Unit 204 Hallandale address through conducting a search of the Broward County Property Appraiser records in November of 2020. (ECF No. 55 at 10) Andre Pigeut is listed as the owner of Unit 204 Hallandale. (ECF No. 55-5 at 1) Plaintiffs also attempted service at this location on December 30, 2020, at 10:20 a.m., and January 5, 2021, at 2:36 p.m. (ECF No. 50) The process server stated that during each attempt there was no answer at the door. (ECF No. 50)

On January 5, 2021, Aventure filed its 2021 Annual Report with the Florida Secretary of State. (ECF Nos. 55 at 9; 42-3) The report lists the address for Aventure as 2450 Hollywood Blvd., Suite 503, Hollywood, FL, 33020 ("Suite 503"). (ECF No. 42-3) Simon Naon (Aventure's registered agent) is identified as the registered agent and Piguet is listed as an officer. (ECF No. 42-3) Plaintiffs attempted to serve both Aventure and Piguet at the Suite 503 address on January 6, 2021, at 11:10 a.m. (ECF Nos. 49; 50) The process server reported that he spoke with a John Doe and a Jane Doe who stated they had never heard of either Aventure or Piguet. (ECF Nos. 49; 50) The process server further stated that the suite was divided into multiple offices, but that he did not see any posted signs for the Aventure, nor did he see the company listed in the main directory in the lobby of the building. (ECF No. 49)

Also on January 5, 2021, Plaintiffs sent via certified mail a copy of the Amended Complaint and waivers of service to Defendants, including to Aventure's registered agent at the UPS mailbox. (ECF No. 48-2) The package sent to Aventure's registered agent was returned to the sender. (ECF No. 48-2 at 38) The package sent to Piguet at the Unit 204 address was delivered on January 8, 2021. (ECF No. 48-2 at 73–76)

After the unsuccessful attempts at personal service, Plaintiffs again sought to effectuate substitute service. On January 12, 2021, the Florida Secretary of State accepted service on behalf of both Aventure and Piguet. (ECF No. 48-3) On January 13, 2020, Plaintiffs sent notice of service via certified mail to Defendants and their counsel. (ECF No. 48-4) The package addressed to Aventure was sent to the Suite

503 address, the address registered with the Florida Division of Corporations, care of Aventure's registered agent. (ECF No. 48-4 at 1) The tracking information for the Suite 503 package shows that the package is still in transit.[3] (ECF No. 55-2) Plaintiffs also sent the package to Aventure's registered agent at the UPS mailbox. (ECF No. 48-4 at 85) The return receipt shows that this package was delivered on January 16, 2021. (ECF No. 48-6) The package for Piguet was sent to the Unit 204 Hallandale address. (ECF No. 48-4 at 113) The return receipt shows that this package was delivered on January 15, 2021. (ECF No. 48-5)

Plaintiffs also sent the notices to both Garret Kamen, Esq., and David S. Willig, Esq., Defendants' counsel. (ECF No. 48-4 at 29, 57) Mr. Kamen acknowledged receipt of the notice on February 1, 2021. (ECF No. 55-8) Mr. Willig received the notice on January 19, 2021. (ECF No. 55-1)

### C. Post Motion to Dismiss

Defendants filed the instant Motion to Dismiss on March 1, 2020. (ECF No. 53) On April 1, 2021, Plaintiffs filed a Request for Hearing, or in the alternative, Motion for Leave to Amend Response to Motion to Dismiss stating that Defendants' Reply presented new issues that had not been raised in the Motion or Response. (ECF No. 61) In their Reply, Defendants' stated, "[a]lthough not authorized to accept service . . ., Defendants' counsel maintained an open dialogue with Plaintiffs, but were not consulted before Plaintiffs attempted to serve Defendants." (ECF No. 60 at 3) Plaintiffs asserted this was false. (ECF No. 61 at 1)

---

[3] Plaintiffs have received no explanation from the United States Postal Served as to why the package is still in transit. (ECF No. 55 at 12)

On April 6, 2021, the Court entered an order requiring the parties to confer regarding the addresses at which service may be effectuated for both Defendants. (ECF No. 62) The Order stated, "If Defendants refuse to provide such addresses, then Plaintiff shall file a Surreply."[4] (ECF No. 62)

On April 12, 2021, Plaintiffs filed a Notice of Compliance stating that the parties had conferred on April 8, 2021. (ECF No. 63) During the conferral, Defendants confirmed that the registered address for Aventure was the Suite 503 address. (ECF No. 63) Defendants also advised that "due to the situation, that may change, either with a resignation of registered agent, or a change of registered agent." (ECF No. 63) Defendants also provided an address for Piguet in Switzerland. (ECF No. 63)

In response, the Court issued a paperless order requiring the parties to file a joint status report advising the Court whether Defendant's Motion to Dismiss for Insufficient Service of Process was moot. (ECF No. 64) In the Joint Status Report filed on April 14, 2021, Defendants asserted the Motion was not moot. (ECF No. 65) Plaintiffs filed their Surreply on April 15, 2021. (ECF No. 66) The Motion is now ripe for review.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure require a court to dismiss an action without prejudice if a defendant is not served within the time specified in the Rule,

---

[4] The parties have asserted that the Court ordered the Defendants to provide their addresses. (ECF No. 65 at 2) The Court did not order that the addresses must be disclosed; rather, the parties were instructed to confer regarding the issue. (ECF No. 62) The Order clearly states, "If Defendants refuse to provide such addresses . . . ." (ECF No. 62 at 2) Therefore, it was optional for Defendants to provide addresses.

or within the time extended by the court after a showing of good cause for a delay in perfecting service. Fed. R. Civ. P. 4(m).  An individual defendant may be served by following the state law for service in the state where the district court is located. Fed. R. Civ. P. 4(e)(1).  An individual may also be served by "delivering a copy of the summons and of the complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). A corporate defendant must be served "in the manner prescribed by Rule 4(e)(1)," or by serving a "general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h).

"[T]he fundamental purpose of service is 'to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff . . . .'" Shurman v. Atlantic Mortg. & Inv. Corp., 795 So. 2d 952, 953 (Fla. 2001); see also Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")

## IV. DISCUSSION

Defendants advance several arguments as to why service is insufficient in this case. Specifically, Defendants argue that (1) substitute service was improper; (2)

service through the UPS mailbox was improper; (3) Piguet should be served through international service requirements; and (4) service has not been timely effectuated. Plaintiffs, of course, assert that service has been properly effectuated.

As a preliminary matter, the Court finds that the timing and circumstances of this case present an issue of first impression. The COVID-19 pandemic, in which many people are working remotely from home, unquestionably has interfered with Plaintiffs' attempts at service. Further, Defendants' efforts to avoid service have made it nearly impossible for Plaintiffs to effectuate service with by conventional means. Based upon the understanding that service of process is meant to give individuals notice of the claims against them, the Court finds that the equities weigh strongly in Plaintiffs' favor. See Mullane, 339 U.S. at 314–15 ("[N]otice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance, . . . [b]ut if with regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.") (internal citations itted**).**

## A. Substitute Service

In Florida, the general rule is that a defendant must be personally served. Societe Hellin, S.A. v. Valley Commercial Capital, LLC, 254 So. 3d 1018, 1020 (Fla. 4th DCA 2018). As an exception to the general rule, Fla. Stat. § 48.181 (2020) authorizes substituted service on nonresidents doing business in Florida or on defendants who are concealing their whereabouts. Pelycado Onroerend Goed B.V. v.

Ruthernberg, 635 So. 2d 1001, 1003 (Fla. 5th DCA 1994); see also Mecca Multimedia, Inc. v. Kurzbard, 954 So. 2d 1179, 1182 (Fla. 3d DCA 2007).

For service under § 48.181 to be proper, the Plaintiff must make the "necessary jurisdictional allegations in his complaint to clearly bring himself within the ambit of the statute." Mecca, 954 So. 2d at 1182. "The jurisdictional requirements of § 48.181 are that the defendant conducts business in Florida and is either: (1) a nonresident, (2) a resident of Florida who subsequently became a nonresident, or (3) a resident of Florida concealing her whereabouts." Taverna Opa Trademark Corp. v. Ismail, No. 08-20776, 2009 WL 1220513, at *1 (S.D. Fla. Apr. 30, 2009).

Where substituted service is authorized per § 48.181, the methods of effectuating such service are set forth in Fla. Stat. § 48.161 (2020). Under § 48.161, "the plaintiff must (i) send notice to the defendant, via certified or registered mail, that substitute service has been effected through the Secretary of State, (ii) file the return receipt from the defendant, and (iii) file an affidavit of compliance. Dixon v. Blanc, 796 F. App'x 684, 687 (11th Cir. 2020). Perfection under § 48.161 "requires strict compliance with the statutory prerequisites because such service is an exception to personal service." Id. (quoting Wyatt v. Haese, 649 So. 2d 905, 907 (Fla. 4th DCA 1995).

However, "[b]efore using the substitute service statutes, a plaintiff must 'demonstrate the exercise of due diligence in attempting to locate the defendant.'" Alvarado-Fernandez v. Mazoff, 151 So. 3d 8, 16 (Fla. 4th DCA 2014).

> The test [for determining the sufficiency of constructive or substitute service] is not whether it was in fact possible to effect personal service in a case, but whether the [plaintiff] reasonably employed knowledge at [her] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable [her] to effect personal service on the defendant.

Id. at 17. (alterations in original) (citations omitted).

### 1. Concealment of Whereabouts

Defendants argue that substitute service is invalid because neither Piguet nor Aventure are concealing their whereabouts. (ECF No. 53 at 4–5) As to Piguet, the Court finds that the plain language of § 48.181 does not require a showing of concealment for substitute service to be authorized. The plain language of §48.181 in part states:

> The acceptance by any person or persons, individually or associated together as a copartnership or any other form or type of association, who are residents of any other state _or_ country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of the state _or_ conceals his or her whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the persons and foreign corporations of the Secretary of State of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served.

Fla. Stat. § 48.181(1) (emphasis added). In other words, the statute states that when certain persons engage in business within the state of Florida, the Secretary of State is automatically appointed as an agent through whom service can be effectuated. The statute then lists the persons for whom substitute service can be made by serving the

Secretary of State. The list reads: "(1) residents of any other state or country, and (2) all foreign corporations, and (3) any person who is a resident of the state: and who (a) subsequently becomes a nonresident of the state or (b) who conceals his or her whereabouts." Fla. Stat. § 48.181(1) (annotations added). The statute differentiates between a resident of a foreign country and a resident of Florida who is concealing their whereabouts. See Taverna, 2009 WL 1220513, at *1 ("The jurisdictional requirements of § 48.181 are that the defendant conducts business in Florida and is either: (1) a nonresident, (2) a resident of Florida who subsequently became a nonresident, or (3) a resident of Florida concealing her whereabouts.") Thus, a resident of a foreign country does not need to be concealing their whereabouts to come within the ambit of the plain meaning § 48.181.

Defendant Piguet, in his affidavit filed with the Court on March 1, 2021, states that he has resided in Switzerland since 2004 and that he has never resided in Florida. (ECF No. 53-1 at ¶¶ 2–4) Plaintiffs allege in their Amended Complaint that Piguet is the owner of Aventure, which owns and leases apartment buildings. (ECF No. 40 at ¶ 11) Piguet is listed as an officer of Aventure with the Florida Divisions of Corporations. (ECF No. 42-3) Further, Piguet states in his affidavit that he owns real property in Florida which he rents. (ECF No. 53-1)  For the purposes of § 48.181, the Court finds that Piguet is a resident of a foreign country who is engaged in business within the state of Florida. Therefore, Piguet may be served through substitute service, and Defendants' argument that substitute service is improper because Piguet is not concealing his whereabouts is without merit.

By contrast, the Court finds that both Piguet and Aventure are concealing their whereabouts. Defendants have not been forthcoming about where Piguet resides. In Piguet's First Motion to Dismiss, Piguet asserted that he resided in France.[5] (ECF No. 23 at 6) However, on March 1, 2021, Defendants later stated that Piguet resided in Switzerland. (ECF No. 53-1) Defendants did not provide Plaintiffs with an address for Piguet in Switzerland until April 8, 2021, when the parties were ordered to confer. (ECF No. 63)

As to Aventure's concealment efforts, Aventure failed to comply with Fla. Stat. § 48.091, which requires every corporation transacting business in Florida to "designate a registered agent and registered office." Further, the statute requires that: (1) the registered office be open and the registered agent be present from 10:00 a.m. to 12:00 p.m. on each day, except Saturday, Sunday, and legal holidays; and (2) the corporation shall keep a sign posted in the office in some conspicuous place designating the name of the corporation and the name of the registered agent. Fla. Stat. § 48.091(2).

Aventure failed to comply with § 48.091 because Aventure failed to (1) maintain a registered address, (2) keep a registered agent present at the required

---

[5] Defendant Piguet's First Motion to Dismiss states, "Plaintiffs alleged . . . that Defendant Andre Piguet resides in France." (ECF No. 23 at 2). Defendant Piguet went on to state that Piguet is "listed as an officer of the corporation, but resides in France . . . ." (ECF No. 23 at 6) Defendant Piguet further stated, "Plaintiffs cannot establish a person residing in France is concealing himself . . . ." (ECF No. 23 at 7) The undersigned infers that Piguet either resided in France, or alternatively, that Defendants actively misrepresented to Plaintiffs and the Court that Plaintiffs' belief that Piguet resided in France was correct.

times; and (3) post a sign in a conspicuous place designating the name of the corporation or the name of its registered agent. First, Aventure failed to maintain a registered office while the Suite 200B address was leased to Elite Financial Management. (<u>See</u> ECF No. 55 at 9; 42-1 at 3; 29-1) Aventure did not update its registered address to the Suite 503 address until January 5, 2021. (ECF Nos. 55 at 9; 42-3) Second, on two separate occasions, Aventure failed to have a registered agent present at the statutorily required times. On November 20, 2020, at 10:36 a.m., Plaintiffs' process server observed that no registered agent was present at the Suite 200B address. (ECF No. 42-1 at 3) Likewise, on January 6, 2021, at 11:10 a.m., Plaintiffs' process server observed on that no registered agent was present at the Suite 503 address. (ECF No. 49) Finally, during those same attempts at service, Plaintiffs' process server observed that Aventure did not have a conspicuous sign designating the corporation's name or its registered agent. (ECF Nos. 42-1 at; 49)

Moreover, Plaintiffs sought waivers of service September 4, 2020, October 28, 2020, November 12, 2020, December 23, 2020, and January 5, 2021, and thus far, no waiver has been forthcoming. These facts, when viewed in concert, demonstrate that Defendants were attempting to avoid Plaintiffs' efforts at service. Therefore, the Court finds that both Piguet and Aventure were actively concealing their whereabouts, and substitute service may be effectuated upon them both.

## 2. Due Diligence

Defendants next argue that substitute service is invalid because Plaintiffs did not conduct due diligence in attempting to locate the Defendants. (ECF No. 53 at 6)

It should be noted that in the first R&R, the undersigned found that Plaintiffs had exercised due diligence. (ECF No. 34 at 10) To show due diligence, the Plaintiffs must establish that they "reasonably employed knowledge at [their] command, made [a] diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable [them] to effect personal service on the [defendants]." <u>Alvarado-Fernandez</u>, 151 So. 3d at 17. "A common theme in cases holding that the plaintiff failed to exercise due diligence is that 'the plaintiff faile[d] to follow an "obvious" lead.'" <u>Societe Hellin, S.A. v. Valley Commercial Capital, LLC</u>, 254 So. 3d 1018, 1020 (Fla. 4th DCA 2018).

In addition to the findings regarding due diligence discussed in the first R&R (ECF No. 34 at 10), the undersigned finds:

(1) Plaintiffs attempted to personally serve the Amended Complaint on Piguet on six separate occasions. Plaintiffs attempted service on: (1) November 20, 2020, at 3801 Hollywood; (2) November 20, 2020, at Unit 210 Hallandale; (3) December 28, 2020, at Unit 204 Hallandale; (4) December 30, 2020, at Unit 204 Hallandale; (5) January 5, 2021, at Unit 204 Hallandale; and (6) January 6, 2021 at Suite 503.

(2) Plaintiffs located the 3801 Hollywood, Unit 210 Hallandale, and Unit 204 Hallandale addresses by means of a public records search. The results of the searches indicated the Andre Piguet was the owner for each address.

(3) Plaintiffs attempted to serve the Amended Complaint on Aventure on three separate occasions. Plaintiffs attempted service: (1) on November 20, 2020,

at Suite 200B, the registered address for Aventure at the time; (2) on December 28, 2020, at the UPS mailbox registered to Management Miami, Aventure's registered agent's place of employment; and (3) on January 6, 2021, at Suite 503, the current registered address for Aventure.

(4) Aventure changed their registered address to Suite 503 on January 5, 2021, and Plaintiffs attempted service the next day, on January 6, 2021.

(5) The Florida Secretary of State accepted substitute service on behalf of Piguet and Aventure on January 12, 2012. Plaintiffs promptly sent notice of service to both Defendants and their counsels.

Nevertheless, Defendants argue that Plaintiffs failed to follow "obvious leads." (ECF No. 53 at 7) Defendants assert that because of the pandemic conditions worldwide and because Plaintiffs knew that Piguet lived in either France or Switzerland that Piguet should have been easy to locate. (ECF No. 53 at 8) Therefore, according to Defendants, because Plaintiffs made no attempt to serve Piguet in Switzerland, Plaintiffs failed to follow an obvious lead. (ECF No. 53 at 8)

Plaintiffs state that a witness, Scott Cohen, represented that Piguet traveled between Switzerland and France when he was not in Florida. (ECF No. 66 at 7) Additionally, Defendants did not confirm that Piguet lived in Switzerland until March 1, 2021. (ECF No. 53-1) Moreover, Defendants did not provide an address for Piguet in Switzerland until April 8, 2021. The undersigned finds that unconfirmed knowledge that an individual resides in a foreign country, and even possibly two foreign countries, does not constitute an obvious lead that Plaintiffs failed to follow

prior to effectuating substitute service. This is true especially where the Defendants were reluctant to confirm Piguet's residence, as was the case here.[6]

Defendants also assert that Plaintiffs cannot show due diligence because Plaintiffs "knew most of the steps they were taking were doomed to fail." (ECF No. 53 at 7) Defendants appear to assert that Plaintiffs' November 20, 2020 attempt to serve Aventure at the Suite 200B address was futile because Plaintiffs knew the space was leased to Elite Financial Management and that Aventure's registered agent would not be present. Defendants also appear to assert that Plaintiffs' attempts to serve Piguet at the Hallandale locations were "doomed to fail" because Plaintiffs knew Piguet did not reside in Florida. Defendants' argument is meritless. They cannot hide themselves by failing to comply with the registered agent requirements (§ 48.091) while simultaneously blaming Plaintiffs for attempting to serve Defendants at the only locations known to Plaintiffs.

The Court finds that the Plaintiffs have demonstrated due diligence. Due diligence requires "an honest and conscientious effort *appropriate to the circumstances.*" See Alvarado-Fernandez, 151 So. 3d at 17 (emphasis added).

---

[6] Defendants cite to Societe Hellin, S.A. v. Valley Commercial Capital, LLC, 254 So. 3d 1018 (Fla. 4th DCA 2018) in support of their argument that Plaintiffs should have been more diligent by attempting to serve Piguet abroad. (ECF No. 53 at 8) The Court finds the case distinguishable for two reasons. First, at the time of **filing** their complaint, the plaintiffs in Societe Hellin had available to them the foreign addresses for the foreign defendant. Societe Hellin, 254 So. 3d at 1021. Here, Piguet's address in Switzerland was not provided until April 8, 2021, well after Plaintiffs filed their Amended Complaint on November 13, 2020. Second, the Societe Hellin case does not address the issue of locating a foreign defendant during a worldwide pandemic such as COVID-19.

Plaintiffs timely attempted to serve Defendants at the locations known to Plaintiffs, which were found by conducting public records searches of their own. Considering all the circumstances, particularly Defendants' failure to comply with § 48.091 and the confusion fostered by Defendants surrounding Piguet's country of residence, the undersigned finds that Plaintiffs reasonably employed the knowledge at their command, and therefore, Plaintiffs have demonstrated due diligence.

### 3. Strict Compliance with the Substitute Service Statutes

Finally, Defendants argue that Plaintiffs did not strictly comply with the substitute service requirements under Fla. Stat. § 48.161. (ECF No. 53 at 9–10) The three main requirements of § 48.161 are that "the plaintiff must (i) send notice to the defendant, via certified or registered mail, that substitute service has been effected through the Secretary of State, (ii) file the return receipt from the defendant, and (iii) file an affidavit of compliance. Dixon v. Blanc, 796 F. App'x 684, 687 (11th Cir. 2020). Defendants assert that Plaintiffs failed to do all three.

First, Defendants contend that Plaintiffs have not provided proper notice of service upon the Secretary of State to the Defendants because Plaintiffs did not send the notices to the proper addresses. (ECF No. 53 at 9) Plaintiffs sent the notice via certified mail to Piguet at the Unit 204 Hallandale address, which was delivered on January 15, 2021. (ECF Nos. 48-4 at 113; 48-5) The notice to Aventure was sent to Aventure's registered agent at the UPS mailbox, which was delivered on January 16, 2019. (ECF Nos. 48-4 at 85; 48-6) Defendants contend that neither address is valid

because Piguet does not reside at Unit 204 Hallandale and the UPS mailbox is not maintained by Aventure. (ECF No. 53 at 10)

However, in addition to sending the notices to Piguet and Aventure, Plaintiffs also sent the notices to both Garret Kamen, Esq., and David Willig, Esq., counsel for the Defendants. (ECF No. 48-4 at 29, 57) Mr. Kamen acknowledged receipt of the notice on February 1, 2021. (ECF No. 55-8) Mr. Willig received the notice on January 19, 2021. (ECF No. 55-1)

To meet the notice requirement of § 48.161, "a notice of the substituted service and a copy of the process must be sent by registered or certified mail to the defendant or the defendant's attorney." Pelycado, 635 So. 2d at 1003. Plaintiffs sent the notices via certified mail to four different locations associated with the Defendants: an address associated with Aventure's registered agent, an address registered to Piguet, and to two different defense attorneys. Because the notices were sent to defense counsel, it is irrelevant that the addresses for Piguet and Aventure were incorrect. Thus, the Court finds that the notice requirement of § 48.161 has been adequately satisfied.[7]

_____

[7] Defendants cite to Zarcone v. Lesser, 190 So. 2d 805, 807 (Fla. 3d DCA 1966) in support of their argument that notice was not adequately provided to Defendants because the notices were sent to the incorrect addresses for Piguet and Aventure. (ECF No. 53 at 10) Specifically, Defendants cite to Zarcone for the proposition that "where a failure of delivery was not due to rejection of the letters by the addressees, but 'from misdirection of the letters . . . not chargeable to defendants, the material requirement of the statute for such written notice to the defendants would not have been [strictly] complied with.'" See Zarcone, 190 So. 2d at 807. Although not necessary to the Court's analysis as notice was adequately provided to defense counsel, the Court observes that the notices were sent to Piguet at the Unit 204 Hallandale

Second, Defendants argue that Plaintiffs have not filed the return receipts received by Aventure and Piguet. (ECF No. 53 at 10) Defendants assert that the return receipts were not signed or filled out by either Aventure's registered agent or Piguet. (See ECF Nos. 48-5; 48-6) While this may be true, the undersigned notes that the requirement that the return receipts be filed may be dispensed with where the defendant is evading service. Wise v. Warner, 932 So. 591, 593 (Fla. 5th DCA 2006); see also Leviten v. Gaunt, 360 So. 2d 112, 113 (Fla. 3d DCA 1978) ("If due diligence were shown in an effort to locate [the defendant], so that it could be satisfactorily established that her whereabouts is unknown or that [the defendant] is concealing herself, the requirement of filing a return receipt with the court would be obviated."). As established above, the undersigned finds that the Defendants were evading service, and thus, there is no requirement that the return receipts be filed.

Finally, Defendants argue that Plaintiffs did not file the return receipts and the affidavit of compliance "before the return day of the process or within such time as the court allows." Fla. Stat. § 48.161. (ECF No. 53 at 10) Plaintiffs filed the affidavit of compliance with the return receipts attached on February 8, 2021. (ECF No. 48) This Court issued a deadline of February 8, 2021, for Plaintiffs to effectuate service and to "file the returns of either personal service or all evidence of substitute service. . . ." (ECF No. 44) Thus, the Court finds that Plaintiffs have timely complied.

---

address and to Aventure at the UPS mailbox because of misdirection chargeable to Defendants.

#### 4. Conclusion as to Substitute Service

The undersigned finds that substitute service has been properly effectuated by Plaintiffs. Plaintiffs have shown that substituted service is authorized by § 48.181 because Piguet is a resident of a foreign country, and further, Plaintiffs have demonstrated that both Piguet and Aventure are concealing their whereabouts. Plaintiffs have exerted due diligence in attempting to locate proper addresses for Defendants. Further, Plaintiffs have strictly complied with the requirements of § 48.161. "The purpose of service, substituted or otherwise, is to provide the defendant with notice . . . ." Wyatt v. Haese, 649 So. 2d 905, 908 (Fla. 4th DCA 1995). The undersigned concludes that through Plaintiffs' efforts, Defendants' have received adequate notice through substitute service. Therefore, this Court recommends that Defendants' Motion be denied upon these grounds.

#### B. UPS Mailbox

Defendants argue that the service of Aventure's registered agent at the UPS mailbox location was improper. (ECF No. 53 at 3) Under Fla. Stat. § 48.031(6), substitute service may be made by leaving a copy of the summons and complaint with a person in charge of a private mailbox. Further, Fla. Stat. § 48.081(3)(b) specifies that for a corporation, where the address for a registered agent is a private mailbox, service may be made leaving a copy of process at the mailbox. Section §48.031(6) "only permits substitute service through a private mailbox if (1) it is the only address discoverable through the public records, and (2) the process server determines that the person to be served maintains a mailbox at that location." Atmos Nation, LLC v.

Pana Depot, Inc., No. 14-62620, 2016 WL 4549684, at *2 (S.D. Fla. Sept. 1, 2016); see also Center for Individual Rights v. Chevaldina, No. 16-20905, 2017 WL 3098790, at *4 (S.D. Fla. Feb. 21, 2017). Florida courts have recognized that UPS mailboxes are private mailboxes. TID Services, Inc. v. Dass, 65 So. 3d 1, 6 (Fla. 2d DCA 2010).

Plaintiffs attempted to serve Aventure's registered agent at the UPS mailbox location on December 28, 2020. (ECF No. 47) The UPS mailbox is registered to Management Miami, and Aventure's registered agent is the Financial Controller of Management Miami. (ECF No. 55 at 7) Defendants argue that Plaintiffs' attempt to serve Aventure by serving Aventure's registered agent through the UPS mailbox was improper because Aventure does not maintain the mailbox. (ECF No. 53 at 3–4) Specifically, Defendants contend that Plaintiffs have presented no evidence that the process server determined that Aventure maintained a mailbox at the UPS store, and that neither UPS nor Management Miami were authorized to accept service on behalf of Aventure. (ECF No. 53 at 4) Plaintiffs contend that service was proper because Aventure failed to comply with the registered agent requirements mandated by § 48.091 and that the UPS address was the only valid address they could find for Aventure's registered agent other than the defunct Suite 200B address. (ECF No. 55 at 7–8) Plaintiffs further contend that Management Miami is the property management company for Aventure. (ECF No. 55 at 7)

The Court finds that the service of Aventure's registered agent at the UPS mailbox was proper. The legislative history to § 48.081(3)(b) states that "the effect of the section is to give greater flexibility for service of process on corporations when the

corporation's registered agent cannot be served or the corporation does not have a physical address." Senate Staff Analysis and Economic Impact Statement, Senate Bill 222, Regular Sess. (Fla. Jan. 20, 2004). Further, in Florida, an individual may be served at his place of employment. Hernandez v. Cantor Granite Design LLC, No. 6:14-cv-182, 2014 WL 12872782, *1 (M.D. Fla. Apr. 9, 2014) (noting that Fla. Stat. § 48.031(1)(b) requires an employer to permit a process server to serve an employee in a designated area). When §§ 48.081(3)(b) and 48.031(6) are read together along with the consideration that individuals may be served at their place of employment, the Court finds that Florida law contemplates that where a corporation is avoiding service by not complying with § 48.091, service may be effectuated at the corporation's registered agent's place of employment where the employer's address is a private mailbox. See Fla. Stat. §§ 48.081(3)(b); 48.031(6).

As previously established, Aventure was not in compliance with § 48.091 because Aventure had failed to maintain a registered address, failed to keep a registered agent present at the required times, and failed to post conspicuous signage. Thus, Plaintiffs could not serve Aventure's registered agent at Aventure's registered address. When Plaintiffs discovered that Aventure's registered agent worked for Management Miami, Plaintiffs decided to serve him there. (ECF No. 55 at 7) However, when Plaintiffs' process server attempted to serve Aventure's registered agent at Management Miami, the process server discovered that the address for Management Miami was a UPS store. (ECF No. 47) The process server verified with the UPS store manager, Ken Gil, that Management Miami maintained an active

mailbox at that location. (ECF No. 47) The process server then left service with the UPS store manager, Ken Gil. (ECF No. 47)

The Court finds that the service of Aventure's registered agent at the UPS mailbox is proper. First, under Florida law, it is permissible that Aventure's registered agent may be served at his place of employment. In this case, the address of his place of employment was a UPS mailbox. This is consistent with Elizabeth Pero's statement that Management Miami operated remotely with every employee working from home.[8] (ECF No. 55 at 7) Second, the requirements that the mailbox be the registered agent's address and that it be the only discoverable address under §§ 48.081(3)(b) and 48.031(6) are satisfied because the UPS mailbox was the only discoverable address for Aventure's registered agent other than the defunct Suite 200B address listed with the Florida Division of Corporations. Finally, Plaintiffs' process server verified that Aventure's registered agent, through his employer, maintained the UPS mailbox in satisfaction of the requirement under § 48.031(6) that the process server determine that the person to be served maintains a mailbox at that location. Therefore, the Court finds that Plaintiffs have complied with the requirements of §§ 48.081(3)(b) and 48.031(6), and recommends that Defendants' Motion to Dismiss be denied upon these grounds.

---

[8] Elizabeth Pero is an administrative assistant at Management Miami. (ECF No. 55 at 7)

## C. Foreign Service

Defendants argue that Piguet, who resides in Switzerland, must be served through a proper mechanism for international service. (ECF No. 53 at 10) An individual "*may* be served at a place not within any judicial district of the United State." Fed. R. Civ. P 4(f) (emphasis added). Therefore, foreign service is not a requirement. Further, the Court finds that international service is unnecessary because Piguet was properly served through substitute service pursuant to Fla. Stat. §§ 48.181 and 48.161.

## D. Failure to Serve Process within Time Allowed

Defendants argue that Piguet and Aventure have not been served within the time allowed under Fed. R. Civ. P. 4(m). The court ordered deadline for effectuation of service was February 8, 2021. (ECF No. 44) As required under § 48.161, Plaintiffs filed their affidavit of compliance on February 8, 2021, thereby completing their requirements to effectuate substitute service upon Defendants. Further, Aventure was properly served through the UPS mailbox on December 28, 2020. Thus, Plaintiffs have timely effectuated service.

## **V. CONCLUSION**

Defendants, for the second time, argue that Plaintiffs have not followed the exact requirements of the substitute service statutes while Defendants have willfully thwarted Plaintiffs' efforts in doing so. Defendants have failed to comply with the mandates of § 48.091 in an effort to deter Plaintiffs' strict compliance. Further,

Defendants did not heed the Court's prior order clearly advising Defendants of their obligations under § 48.091 to maintain a registered address, to have conspicuous signage, and to have a registered agent present at the required times.

Defendants argue to the Court that Plaintiffs did not strictly comply with § 48.161, yet Defendants seem to ignore their own failure to comply with § 48.091. In fact, Defendants so graciously suggest that Plaintiffs' Amended Complaint should be dismissed without prejudice so that Plaintiffs may be permitted to refile a new action. (ECF No. 65 at 2) The Court is not blind to Defendants' purpose in avoiding service. Defendants seek dismissal in this manner which will effectively result in the statute of limitations barring most, if not all, of Plaintiffs' claims.[9]

Defendants' actions and inaction cannot be rewarded. "[The Eleventh Circuit] expresses a 'strong preference that cases be heard on the merits,' and 'strive[s] to afford a litigant his or her day in court, if possible.'" Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1342 (11th Cir. 2014) (internal citations omitted). Further, Fed. R. Civ. P. 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Sanderford v. Prudential Ins. Co., 902 F.2d 897,

---

[9] This Court discussed the statute of limitations issue in the first R&R. (ECF No. 34 at 9) A claim under the Fair Labor Standards Act must be commenced within two years after the cause of action accrued or within three years of accrual if the cause of action arises out of a willful violation. See 29 U.S.C. § 255(a) (2020). Plaintiffs allege that their cause of action accrued in June of 2016 and that they were employed by Defendants until August 31, 2019. (ECF No. 40 at 4) If Plaintiffs case were to be dismissed today and Plaintiffs were immediately to file a new suit, the statute of limitations would potentially bar their claims from June 2016 to May of 2019. This would effectively bar all of Plaintiffs' claims for unpaid wages.

900 (11th Cir. 1990). The Court finds that Defendants have received sufficient notice of the Amended Complaint through properly effectuated substitute service.

After careful review of the Motion, the Response, the Reply thereto, the Surreply thereto, the court file, and applicable law, it is hereby

RECOMMENDED that Defendants' Motion to Dismiss the Amended Complaint for Insufficient Service of Process (ECF No. 53) be DENIED.

The parties will have fourteen (14) days after being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. See 28 U.S.C. § 636(b)(1) (2020) (providing procedure for review of magistrate judge Report and Recommendation). Failure to timely file objections shall bar the parties from a de novo determination by Judge Dimitrouleas of any issue covered in this Report and shall bar the parties from challenging, on appeal, the factual findings accepted or adopted by this Court, except upon grounds of plain error or manifest injustice. See Thomas v. Arn, 474 U.S. 140, 145–53 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 7th day of May 2021.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record